# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELBA L. WEAVER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-12-138-SPS |

## OPINION AND ORDER

The claimant Melba L. Weaver requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 6, 1954, and was fifty-seven years old at the time of the administrative hearing (Tr. 26, 121). She has a high school education and past relevant work as receptionist and telephone answering operator (Tr. 17, 26). The claimant alleges that she has been unable to work since August 28, 2008 because of back problems, chronic obstructive pulmonary disorder (COPD), and arthritis (Tr. 138).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on January 14, 2010, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 31, 2009. The Commissioner denied her applications. ALJ Osly F. Deramus held an administrative hearing and found that the claimant was not disabled in a written opinion dated July 26, 2011. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform light work, 20 C.F.R. §§ 404.1567(b); 416.967(b); could stoop, balance, and climb stairs occasionally but never crouch, crawl, kneel, or climb ladders; and must avoid concentrated exposure to dust, fumes, gases, and other pulmonary irritants (Tr. 12-13). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a receptionist and telephone answerer (Tr. 17-18).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly analyze her obesity; (ii) by finding she could return to her past relevant work; and (iii) by failing to properly analyze her credibility. The Court finds none of these contentions persuasive, and the decision of the Commissioner should therefore be affirmed.

In June 2008, the claimant began receiving physical therapy for chronic back pain aggravated by prolonged gait, standing, and lifting (Tr. 266). The claimant had met her short-term goals within two weeks and was discharged on June 25, 2008 (Tr. 248). She went to the emergency room at Choctaw Nation Hospital in October 2009 with back pain (Tr. 214). MRI results from that visit reveal that the claimant had broad based disc bulges at the L3-L4 and L4-L5 disc levels with severe neuroforaminal stenosis on the left at the L4-L5 level, severe facet joint arthrosis with mild grade 1 anterolisthesis of L5 on S1, and atherosclerotic vascular disease (Tr. 215). The claimant began physical therapy

again in December 2009, at which time it was noted that she was experiencing numbness in her upper back and legs (Tr. 237). She continually complained of back pain during her visits (Tr. 224, 226, 229). Dr. Paul Chin. M.D. of the Choctaw Nation Health Services Authority submitted a letter dated May 6, 2011 which stated that the claimant had been diagnosed with the following conditions: (i) obesity; (ii) COPD; (iii) bilateral adrenal adenoma; (iv) left renal cyst; (v) sigmoid colon diverticulitis; (vi) finger joint arthopathy; (vii) broad based disc bulges at the L3-L4 and L4-L5 disc levels with contributing to mild central canal narrowing but with severe neuroforaminal stenosis on the left at the L4-L5 disc level; and viii) bilateral lower extremity edema (Tr. 398).

The claimant presented to state agency physician Adel Malati, M.D. for a physical exam on March 31, 2010 (Tr. 293-308). Dr. Malati noted that the claimant complained of back problems and pain that "radiates up to between her shoulder blades and her neck and also radiates to her buttocks and the inner side of her right thigh" (Tr. 293). Her medications were listed as Mobic, ibuprofen, Flexeril, and albuterol (Tr. 293). Upon examination, Dr. Malati wrote that the claimant had a nice, normal, steady gait with a slight limp on the right lower extremity, full range of motion in her neck, shoulders, elbows, wrists, and hands, and full range of motion in her back (Tr. 296). Further, Dr. Malati wrote that the claimant "did not complain of tenderness on palpation, but she did complain of "pain with every movement of her back" (Tr. 296). Finally, Dr. Malati noted that the claimant exhibited good heel and toe walking and full range of motion in her hips, knees, and ankles (Tr. 296).

State agency physician Dr. Lise Mungul, M.D. reviewed the claimant's medical records and completed a Physical Residual Functional Capacity Assessment. She opined that the claimant could lift/carry up to twenty pounds occasionally and up to ten pounds frequently, and stand/walk/sit for about six hours in an eight-hour workday (Tr. 310). Dr. Mungul also found that the claimant could climb ladders, ropes, and scaffolds and stoop occasionally, but could frequently climb ramps and stairs, balance, kneel, crouch, and crawl (Tr. 311). Finally, Dr. Mungul opined that the claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 313).

State agency physician Dr. J. Marks-Snelling, D.O., M.P.H. reviewed records and completed a Physical Residual Functional Capacity Assessment. He opined the claimant could lift/carry up to twenty pounds occasionally and up to ten pounds frequently, and stand/walk/sit about six hours in an eight-hour workday (Tr. 364). Dr. Marks-Snelling also found that the claimant could stoop occasionally stoop but could frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, kneel, crouch, and crawl (Tr. 365). Finally, Dr. Marks-Snelling opined that the claimant should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 367).

The claimant testified at the administrative hearing that she had arthritis in her hands that affected her hands and fingers (Tr. 27). She stated that she had problems with her right leg, trouble turning her neck, and constant pain in her lower back that radiated into her right hip and leg (Tr. 30). She testified that she had muscle spasms in her back, shoulder, and neck, and experienced instability in her right leg once or twice a week (Tr.

32). The claimant also testified that COPD caused her to have heaviness and difficulty in breathing (Tr. 33). She claimed she could stand only ten to fifteen minutes with the help of a cane before she felt as though her back will give out on a good day (Tr. 34).

The claimant first contends that the ALJ failed to properly analyze her obesity at step two and at step four. The Court does not agree. First, any error by the ALJ in failing to find that the claimant's obesity was a severe impairment was harmless, because the ALJ found other impairments to be severe and was therefore required to analyze even non-severe obesity along with such severe impairments throughout the sequential analysis. *See, e. g., Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean that the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"), *citing* Soc. Sec. Rul. 96–8P, 1996 WL 374184, at *5. Second, the ALJ clearly considered the claimant's obesity, noting her weight and her success with recent weight loss. In any event, the record contains no evidence that the claimant's obesity impacted any of her other impairments or otherwise limited her ability to perform work-related activities. *See, e. g., Callicoatt v. Astrue*, 296 Fed. Appx. 700, 702 (10th Cir. 2008) ("[The claimant] points to no evidence in the medical record (or in her hearing testimony for that matter), showing

that her obesity exacerbated her other impairments. Without some evidence that her obesity was relevant to her other alleged impairments during the relevant time frame, the ALJ was not required to consider the claimant's obesity."). Thus, "the factual record does not support claimant's position that her obesity, either alone or in combination with other conditions, precludes her from performing light work[,]" *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004), and the Court concludes that any error by ALJ regarding his analysis of the claimant's obesity is harmless.

The claimant next contends that the ALJ failed to properly analyze her credibility. This contention, too, is without merit. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

In this case, the ALJ summarized the claimant's testimony and determined that her "statements concerning the intensity, persistence, and limiting effects of [her] symptoms

[were] not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 13). This Court and others have disapproved such language in the past, as it suggests an improper approach to the process of analyzing the claimant's credibility, *i. e.*, assigning an RFC and measuring credibility against the RFC, rather than evaluating credibility (along with all the other evidence in the case) and then formulating an appropriate RFC. *See, e. g., Bjornson v. Astrue,* 671 F.3d 640, 645-46 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). *See also McFerran v. Astrue,* 437 Fed. Appx. 634, 637 (10th Cir. 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' We agree with Mr. McFerran that the ALJ's credibility assessment must be set aside."). But in this case the ALJ did not limit his evaluation of the claimant's credibility to the above-mentioned boilerplate language. The ALJ went on to note relevant factors for evaluating a claimant's credibility as to pain under *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987), and cited evidence in support of his

reasons for finding that the claimant's subjective complaints were not credible. For example, the ALJ mentioned: (i) the claimant had normal gait, strength, and tone; normal chest examinations with clear lungs and normal respiratory efforts; and full range of motion in her back; (ii) upon examination, the claimant "was able to sit, stand, and lie down without difficulty" and was able to perform heel and toe walking without difficulty; and (iii) the claimant's medical records reflected that the claimant's symptoms were well-controlled with medications and physical therapy (Tr. 15-16). Thus, the ALJ linked his findings as to the claimant's credibility to supporting evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. His credibility determination was therefore not clearly erroneous.

Finally, the claimant contends that the ALJ erred by finding she could perform her past relevant work. Step four requires a three-phase analysis; the ALJ must first evaluate the claimant's RFC, then determine the physical and mental demands of the claimant's past relevant work, and finally conclude whether the claimant has the ability to meet the job demands of past relevant work using the determined RFC. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ may utilize a vocational expert at step four to supply information regarding the demands of claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform [her] past relevant work." *Id*. at 1025.

The claimant challenges the ALJ's step four analysis at all three phases. First, the claimant challenges the ALJ's determination of her RFC for failure to properly consider

her obesity and credibility. As discussed in detail above, the ALJ committed no error in this regard. Second, the claimant contends that the ALJ failed to properly determine the demands of her past relevant work. But the Court is satisfied that the vocational expert's testimony at the administrative hearing and the claimant's work history were sufficient to establish the demands of the claimant's past work. *See*, *e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]"). In her work history report, the claimant noted that she answered phones, took and delivered messages, sold and exchanged pagers, checked billing problems and posted payments as a receptionist, and that she answered phones, delivered messages, counted and posted calls, emptied the trash and vacuumed as a telephone answering operator (Tr. 160-61). She also testified about those jobs in response to questions from the ALJ at the administrative hearing (Tr. 28). The vocational expert testified that she had reviewed the claimant's work history and had no questions about it, whereupon the ALJ asked her to identify and classify the claimant's past relevant work (Tr. 35). The vocational expert responded by classifying the receptionist position as sedentary with a skill level of four and the telephone answering operator as sedentary with a skill level of three (Tr. 35). Assuming *arguendo* that such evidence was insufficient to establish the demands of the claimant's past work, the ALJ determined she could return to her past relevant work as a receptionist and telephone answering operator as she performed it *and as it was generally performed in the national economy*. This dual finding makes any further inquiry into the

actual demands of the jobs unnecessary. *See Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1. *See also Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past."), *citing Andrade*, 985 F.2d at 1051.

Third, the ALJ clearly made his own phase-three finding that the claimant's RFC did not preclude her performance of past relevant work (Tr. 17). Although the ALJ partially relied on the VE's testimony for determining the demands of the claimant's past work at phase two, *see Winfrey*, 92 F.3d at 1025 ("[T]he ALJ may rely on information supplied by the VE at step four[.]"), he made his own phase-three finding that the claimant had an RFC for light work and could return to her past work as a receptionist and telephone answering operator. *Id.* ("[T]he ALJ . . . must make . . . [his] own evaluation of the claimant's ability to perform . . . past relevant work."). The claimant's argument in this regard is that the ALJ's errors at steps one and two precluded him from making a proper step three finding. As discussed *supra*, those contentions are without merit, and the Court therefore finds that the ALJ made a proper phase-three finding as well. Thus, the Court finds no error in the ALJ's step four analysis.

## Conclusion

In summary, the Court finds that the ALJ employed correct legal standards, and that the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner is accordingly hereby AFFIRMED.

**DATED** this 30th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma